IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>  )<br> v.  )<br>  ) Criminal Action No. 1:09-cr-76-2 (RDA)<br> CALVIN SHANKLAND DRAYTON, )<br>  )<br> Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Calvin Shankland Drayton's ("Defendant") Second Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion"). Dkt. Nos. 234; 235. Considering the Motion, the Government's Opposition (Dkt. 237), and Defendant's replies (Dkt. Nos. 240-2, 241), it is hereby ORDERED that Defendant's Motion for Compassionate Release is DENIED. Defendant's Motion for Leave to File an Out of Time Reply (Dkt. 240) is GRANTED.

I.  BACKGROUND

An indictment was filed on February 19, 2009, charging Steven Anthony Turrentine ("Turrentine") with Count 1, Hobbs Act Armed Robbery, in violation of 18 U.S.C. §§ 2 and 1951, and Count 2, Using a Firearm in a Crime of Violence, in violation of 18 U.S.C. §§ 2 and 924(c)(1). Dkt. 1. On April 23, 2009, a superseding indictment was filed as to Turrentine, James Chad Dipaolo (collectively "codefendants"), and Defendant. Dkt. 18. Defendant and codefendants were charged with Count 1, Hobbs Act Robbery, in violation of 18 U.S.C. §§ 1951 and 2; Count 2, Conspiracy to Commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; and Count 3, Use and Carry a Firearm During and in Relation to a Crime of Violence, in violation of 18 U.S.C. §§ 924 (c)(1) and 2. Dkt. 18.

The Court accepted Defendant's guilty plea on June 8, 2009, and granted the government's motion to dismiss Count 2 of the superseding indictment. Dkt. 60. Defendant's sentencing hearing occurred on August 28, 2009. The Court sentenced Defendant to 60 months of imprisonment on Count 1 and 84 months of imprisonment on Count 3, to be served consecutively. Dkt. Nos. 111; 112. The Court also imposed three years of supervised release on Count 1 and five years of supervised release on Count 3, to be served concurrently. *Id.* The Court also imposed $200.00 in special assessments and $5,735.00 in restitution, which was deemed to be paid jointly and severally between Defendant and codefendants. *Id.* Defendant's sentence was later reduced pursuant to a Rule 35 motion to 86 months of imprisonment, resulting in 26 months on Count 1 and 60 months on Count 3, to be served consecutively. Dkt. Nos. 126; 139.

Defendant was released and began serving his term of supervised release on October 23, 2015. Dkt. 160. A petition on Defendant's supervised release was filed on March 18, 2016 by his supervising probation officer, Joanne E. Marden ("probation officer"). Dkt. 160. The probation officer advised that Defendant submitted a urine sample that tested positive for marijuana on November 23, 2015 and recommended that no action be taken. Dkt. 160. The Court approved the no-action request. The probation officer then revealed that on March 9, 2016, Defendant was arrested in Fredericksburg, Virginia for Possession with Intent to Distribute cocaine, MDMA, and marijuana; Possession of a Firearm by a Convicted Felon; and two counts of Possession of a Firearm While Being in Possession of a Schedule I/II Substance. *Id.* Defendant pleaded guilty in Spotsylvania Circuit Court to Possession of a Firearm by a Convicted Felon and Possession of a Schedule I/II Substance with Intent to Distribute. Dkt. 225 at 3. This Court then issued an arrest warrant based on the violations of law set forth in the petition. Dkt. 162. The arrest warrant was returned executed on August 6, 2019. Dkt. 193.

At Defendant's revocation hearing before this Court, Defendant admitted to violating the conditions of his supervised release. Dkt. 204. Accordingly, the Court found Defendant in violation. *Id.* The Court sentenced Defendant to 51 months of incarceration and terminated his supervision. Dkt. Nos. 204; 205.

On January 2, 2020, Defendant, proceeding *pro se*, filed a Motion to Reduce Sentence pursuant to the First Step Act. Dkt. 222. That motion remains pending before the Court. *See* Dkt. Nos. 230; 231; 233; 236.

On April 21, 2020, Defendant, through counsel, filed an emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 224. The government filed its Response in Opposition on April 30, 2020. Dkt. 225. Defendant did not file a reply brief. The Court denied this first Motion for Compassionate Release on May 7, 2020. Dkt. 227.

On March 1, 2021, Defendant filed the instant Motion and then filed a Supplement, through counsel, on March 10, 2021. Dkt. Nos. 234; 235. The Motion and Supplement are construed together as the Second Motion for Compassionate Release, a motion filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 235. The government filed its Response in Opposition on March 26, 2021. Dkt. 237. On June 25, 2021, Defendant filed a Motion for Leave to File an Out of Time Reply and attached the Reply as an exhibit. Dkt. 240. On July 6, 2021, a second out of time Reply was filed. Dkt. 241.

## II. ANALYSIS

Defendant requests that, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court release him from detention at FCI Butner Medium I ("FCI Butner"). Dkt. 235. In addition to the points raised in his first Motion for Compassionate Release, Defendant notes several developments that he argues favor his release. Dkt. Nos. 224; 234; 235; 241. Defendant argues that he has exhausted

administrative remedies as Warden Sullivan denied his release request in an April 14, 2020 letter.[1] Dkt. 235-1.  Defendant notes changes in executive branch sentencing policy and a change in the definition of "extraordinary and compelling reasons" as a result of *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).[2]  Dkt. 234 at 1-2.

In addition to health conditions he raised in his first compassionate release motion, such as high blood pressure, Defendant argues that obesity and a prior "COVID like" illness give him a higher risk of developing serious health consequences.  Dkt. Nos. 234; 235.  Defendant states that his vaccination may be less effective due to his obesity and the rise of new COVID-19 variants, and he alleges broader issues: that "[e]xperts are still learning more about how long vaccine protect[ion lasts]" and that FCI Butner is below "herd immunity."  Dkt. 241, 3-5.  Defendant also posits that "uncontrollable" conditions at FCI Butner are being litigated in the Eastern District of North Carolina.[3]  Dkt. 234 at 1.  Defendant further states that educational classes have been suspended during the pandemic, Dkt. 235 at 3, and that the other safety measures at FCI Butner[4] have made his imprisonment "particularly difficult and dehumanizing" to a degree that should affect sentencing.  Dkt. 241 at 7 (citing *United States v. Spano*, 476 F.3d 476, 479 (7th Cir. 2007)). Finally, Defendant notes his good behavior, his work record, his completion of various educational

---

[1] The Court considers this letter for the first time here.  The letter first appeared in the record with the Second Motion for Compassionate Release.  Dkt. 235-1.  Defendant's counsel notes he "was unaware of the BOP's denial at the time of filing the original motion." Dkt. 235 at 1 n.2.

[2] The instant Motion noted four cases and their docket numbers.  Dkt. 234.  These four cases were consolidated into one on appeal.  *McCoy*, 981 F.3d at 274.

[3] The instant Motion referred to that pending litigation as case 5:20-CV-563-M.  Dkt. 234. It is now numbered 5:20-CT-3333-M.

[4] Defendant also notes his "isolat[ion] . . . due to . . . difficulties social distancing," Dkt. 241, 7 (citing an unknown "Trujillo Decl."), but these difficulties are absent from the record.

programs, his close contact with family, and his development of a Home Plan, all during his incarceration. Dkt. Nos. 234; 235; 241.

While sympathetic to concerns about continued COVID risks and encouraged by praiseworthy behavior, the Court finds that release is not warranted under the circumstances.

18 U.S.C. § 3582(c) provides in relevant part that:

> [t]he court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that – (i) extraordinary and compelling reasons warrant such a reduction[.]

Accordingly, this Court must first confirm that Defendant has exhausted his administrative remedies before evaluating the merits of Defendant's Motion. *Id.* Once confirmed, the Court must then "consider the factors set forth in section 3553(a)." *Id.* Finally, the Court must determine whether "extraordinary and compelling reasons" exist to justify his compassionate release. *Id.* The Court will address each issue in turn.

A. Exhaustion of Remedies

Defendant argues that he has exhausted his administrative remedies because Warden Sullivan denied his request for compassionate release in the April 14, 2020 letter. Dkt. Nos. 235; 235-1. The Government generally agrees that administrative remedies were properly exhausted. Dkt. 237 at 9 n. 3. The Government further notes that, although Defendant limited his request to narrow grounds, "the warden's denial stated unequivocally, 'You do not have medical conditions under debilitated medical condition, elderly with medical conditions, or terminal medical

5

condition.'" *Id.* (quoting Dkt. 235-1). The Court finds that Defendant has now exhausted his administrative remedies under § 3582(c)(1)(A), without determining whether this is due to the fact of the denial, the broad nature of the denial, or a long-passed deadline of a "lapse of 30 days" from Defendant's request. Accordingly, this Court will turn to the merits of Defendant's Motion.

### B. Whether Release is Warranted

This Court finds that, despite additional information and developments, neither the "factors set forth in section 3553(a)" nor "extraordinary and compelling reasons" warrant Defendant's release pursuant to 18 U.S.C. § 3582(c)(1)(A).

Congress has not defined what constitutes "extraordinary and compelling" circumstances under § 3582. Instead, Congress has delegated to the United States Sentencing Commission ("the Commission") the responsibility of defining the scope of that phrase. *Id.* Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t). The Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . .[5] (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

---

[5] Defendant is not "at least 70 years old," U.S.S.G. § 1B1.13, and thus, the omitted subsection (1)(B) is inapplicable to the case at hand. Dkt. 227 at 8.

6

U.S.S.G. § 1B1.13.

Further, the Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then, "extraordinary and compelling reasons exist" if the defendant's medical condition, age, family circumstances, or other reason justify such release. U.S.S.G. § 1B1.13, cmt. n. 1.

After the enactment of the First Step Act, many district courts, including this Court, have determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n. 1 "provide[ ] helpful guidance, but . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)) (citing *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D. Va. 2020) and other cases). To be sure, § 3582(c)(1)(A) "requires [ ] that sentence reductions be consistent with 'applicable policy statements.'" *McCoy*, 981 F.3d at 281 (quoting 18 U.S.C. § 3582(c)(1)(A)). At the same time, Defendant draws attention to the Fourth Circuit's determination that "[t]here is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n. 1(A)-(C). . . ." *Redd*, 444 F. Supp. 3d at 726. Accordingly, this Court will treat the § 1B1.13 cmt. n. 1(A)-(C) factors as a guide, but not as an exhaustive list of

circumstances that could justify compassionate release. *See also United States v. Jackson*, No. 3:17-cr-29-2, 2021 WL 1723653, at *1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

For the reasons that follow, the Court does not find that release is warranted.

1. 18 U.S.C. § 3553(a) Factors

As set forth above (*supra*, p. 5), before this Court should even consider whether the circumstances at hand are "extraordinary and compelling," the Court should first consider the factors set forth in 18 U.S.C. § 3553(a). § 3553(a) requires that the Court consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for– (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In the case at bar, Defendant pleaded guilty to Hobbs Act robbery and brandishing a firearm in furtherance of that crime. Dkt. 57. Defendant was placed on supervised release, *but within five months* he had committed new violations of law involving firearms and illicit substances. Dkt. 160. Last year, this Court found that Defendant's requests in the first Motion for Compassionate Release "do not comport with 18 U.S.C. § 3553(a)." Dkt. 227 at 8. As noted at that time: "Considering Defendant's conduct and criminal history, the Court is not convinced that

8

Defendant's release does not pose a risk to the health and safety of the community." *Id.* The Court focuses its review today on what has changed and what has been newly raised.

While the Court notes the apparent change in executive branch policy raised by Defendant, Dkt. 234 at 2, Defendant has not made clear how this impacts his specific case. Further, due to the timing of the policy change in 2021 and a prior change in 2017, only Defendant's sentencing following the revocation of supervised release could have been affected. Memorandum from Matthew Whitaker, Acting Attorney General, Department of Justice to Federal Prosecutors (January 29, 2021), available at https://www.justice.gov/ag/page/file/1362411/download (revoking 2017 Department of Justice guidance and reinstating 2010 guidance). Significantly, Defendant's sentence of 51 months is the shortest in the "range of imprisonment applicable upon revocation" for those with a Criminal History Category of VI who commit a grade A violation while on "supervised release as a result of a sentence for a Class A felony." U.S.S.G. § 7B1.4. Thus, it is unclear how the policy change could have had an impact or could help indicate any "sentence disparities among defendants with similar records." 18 U.S.C. § 3553(a)(6).

Defendant further asserts that the sentence handed down by this Court should be reduced because FCI Butner's measures to protect inmates from COVID-19 have made his sentence harsher than expected, "enhanc[ing] the deterrent effect of [incarceration.]" Dkt. 241 at 7. This Court was and is under no illusion that incarceration is not harsh and, depending on many factors, can be more difficult than expected at the time of sentencing. However, "[i]t would complicate sentencing enormously to require that the length of every sentence vary by the conditions of confinement. . . ." *Spano*, 476 F.3d at 479. Courts instead act with the knowledge that inmates may face a range of conditions. While the Court could not have foreseen a global pandemic, it could certainly make sentencing determinations knowing how difficult incarceration can be. In

adhering to the Sentencing Guidelines and choosing the shortest sentence in the recommended range, the Court has already considered the severity of imprisonment and any related deterrence into consideration. *See* § 3553(a)(2)(B); *see also* Dkt. Nos. 204; 205.

Defendant also raises the suspension of classes during the pandemic but has not argued that the classes are "needed educational or vocational training." § 3553(a)(2)(D). Defendant's new Home Plan also references re-enrolling in classes without specifying their nature. Dkt. 234 at 2. Even if the suspensions are established as a section 3553(a) factor, this would not override the Court's other concerns.

The rest of Defendant's Home Plan provides some helpful information on how Defendant's release would look in practice and how release could support his family. Dkt. Nos. 234 at 2-3; 235, 2. The Government counters that the Home Plan does not clarify how Defendant will avoid recidivism in the same area "where the underlying offense and violations occurred" and does not plan for supervised release. Dkt. 237 at 25. The Court shares the Government's concerns that Defendant "does not identify a plan for, or otherwise address, his previous failings to follow court orders." *United States v. Miller*, No. 3:16-cr-121, 2020 WL 4547809, at *6 (E.D. Va. Aug. 6, 2020). To the contrary, Defendant's prior adjustment to supervised release suggests a real potential for inferior societal adjustment. Additionally, a substitute proposal of release to Fredericksburg, Virginia does not appear to better "protect the public from further crimes of the defendant," § 3553(a)(2)(C), as Defendant's arrest in Fredericksburg and his subsequent guilty plea in neighboring Spotsylvania County are what led to the revocation of supervised release. Dkt. 160 at 3.

Most favorable here, Defendant notes several meritorious actions that the Government concedes are "commendable." Dkt. 237 at 24. Indeed, Defendant is to be commended for his

10

work record, his educational pursuits, his close contact with family, and his good behavior indicated by a lack of recent infractions while incarcerated. Dkt. Nos. 234; 235. The Court encourages the continuation of such acts to build on the 22-month positive record following the revocation of Defendant's supervised release and his return to incarceration.

Yet many factors weigh against this positive record. The Government notes that Defendant has served less than half of his sentence, now about 23 months of a 51-month sentence. Dkt. 237 at 24. This Court has found that serving such a small portion of a sentence (particularly when the sentence was a low guideline sentence) does not provide just punishment, avoid unwarranted sentencing disparities, and afford adequate deterrence. *See, e.g.*, *United States v. Hill*, No. 3:14-cr-114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020); *United States v. Evans*, No. 3:00-cr-63, 2020 WL 5121331, at *7 (E.D. Va. Aug. 31, 2020); *United States v. Lloyd*, No. 2:11-cr-36, 2020 WL 4501811, at *3 (E.D. Va. Aug. 5, 2020). Here, the Court similarly finds that various section 3553(a) factors weigh against release as most of Defendant's sentence is incomplete.

Most significant here, the Court remains aware of the need to "protect the public from further crimes of the defendant." § 3553(a)(2)(C). Defendant's meritorious acts must be weighed against his serious criminal history and his "breach of trust" in violating supervised release in under five months. U.S.S.G. § 7A3(b). Barely a year after its last assessment, the Court remains unconvinced that Defendant's release does not pose a risk to the health and safety of the community. Defendant's renewed request to be released around 29 months before the end of his 51-month sentence does not comport with 18 U.S.C. § 3553(a).

### 2. Extraordinary and Compelling Reasons

Defendant's medical conditions do not show that "extraordinary and compelling reasons" exist that might warrant a reduction in the term of Defendant's imprisonment.

11

The Sentencing Guidelines provide that an "extraordinary and compelling reason" may exist in cases of terminal illness, advanced aging, certain family circumstances, or in other circumstances. U.S.S.G. § 1B1.13, cmt. n. 1. Defendant does not contend that he is "suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," that he is "at least 65," or that his family circumstances meet the narrow grounds in the guidelines. *Id.* This Court turns solely to whether his case is "extraordinary and compelling" for other reasons.

U.S.S.G. § 1B1.13(D) explains that "extraordinary and compelling" circumstances may be present where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." For the reasons set forth above (supra, p. 7), this Court will not rely on the provision of subsection D requiring an additional reason to be first "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13(D).

Instead, the Court relies on the precedent that extraordinary and compelling reasons have been found "when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility." *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020)); *see also United States v. Blevins*, 832 F. App'x 192, 192 (4th Cir. 2020) (per curiam). Here, Defendant has shown neither.

With regard to Defendant's risk of contracting the disease, as was true at the time of this Court's prior order denying compassionate release, the BOP continues to implement the various elements of its modified operations which provide extra protection against COVID-19. Federal Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited September 20, 2021). Further, 896 staff members and 2,479 inmates have been fully vaccinated

12

across Federal Corrections Complex Butner ("Butner FCC"). *Id.* This includes Defendant, Dkt. 237-4, 20, and a large portion of the roughly 3,500 inmates at Butner FCC's four facilities. *See* Federal Bureau of Prisons, FCI BUTNER MEDIUM II, https://www.bop.gov/locations/institutions/btf/; Federal Bureau of Prisons, FCI BUTNER MEDIUM I, https://www.bop.gov/locations/institutions/but/; Federal Bureau of Prisons, FCI BUTNER LOW, https://www.bop.gov/locations/institutions/buf/; Federal Bureau of Prisons, FMC BUTNER, https://www.bop.gov/locations/institutions/buh/ (all last visited September 20, 2021).

Defendant argues that his vaccination and prior recovery from COVID-19 do not preclude compassionate release, citing thirteen such cases. Dkt. 240-2 at 2-4. To some extent, Defendant's arguments in this regard have merit. However, as noted in the most recent case cited, "possib[le] . . . reinfect[ion] with COVID-19 does not constitute an extraordinary and compelling reason warranting release because [the defendant] has now been fully vaccinated against the virus." *United States v. Ricks*, No. 1:17-cr-134-JMS-TAB, 2021 WL 1575950, at *4 (S.D. Ind. Apr. 22, 2021). In fact, each of the 13 vaccination-related cases can be distinguished from the case at bar using some set of independent grounds for release. These grounds include section 3553(a) factors favoring release, a small remaining portion of a sentence, advanced age, an immunocompromised defendant, a halt to needed health services, impending deportation, and/or worsening and, in some cases, potentially terminal health conditions.

Defendant separately alleges that vaccination may be less effective for him due to his obesity, may be less effective in general against new COVID-19 variants, and may not be long lasting. Dkt. 241 at 3-5. However, without clear citations, the Court cannot properly assess these alternative claims. Even assuming that all these vaccine-related deficiencies are true and

13

significant, they do not negate the BOP safety measures protecting inmates. Added to these measures is the fact that, as the Government notes, "[Defendant's] release plan does not show that he is less likely to contract COVID-19 outside FCI Butner." Dkt. 237, 20; *see also United States v. Watson*, No. 1:07-cr-396, 2020 WL 7318269, at *2 (E.D. Va. Dec. 11, 2020) ("Defendant has not proved that his release plan will decrease the likelihood of contracting COVID-19."). Thus, Defendant has not shown that he has a particularized risk of contracting COVID-19 at FCI Butner.

The Court now turns to "particularized susceptibility." *Adamson*, 831 F. App'x at 83. Defendant has two potential risk factors pointing to a particularized susceptibility, obesity and high blood pressure. Dkt. Nos. 234; 235. The Centers for Disease Control and Prevention ("CDC") indicates that obesity, and "possibly high blood pressure," can make one more susceptible to COVID-19.[6] People with Certain Medical Conditions, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The Government's exhibits corroborate Defendant's allegation of obesity and show a BMI that has increased to 31.7 during his current incarceration. Dkt. 237-4 at 4. The Government argues that Defendant's condition should be discounted as he has not been prescribed medication but was merely "encouraged to lose weight." Dkt. 237 at 14 (citing Dkt. 237-4 at 4). The Government further argues that this risk factor "is not a permanent condition." *United States v. Johns*, No. 2:15-cr-24, 2020 WL 6544385, at *1 (E.D. Va. Nov. 5, 2020). Despite these arguments, obesity may mean Defendant has a particularized susceptibility to COVID-19.

---

[6] While Defendant alleges that he has asthma, the CDC only notes "moderate to severe" asthma as a risk factor. People with Certain Medical Conditions, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's alleged history of pneumonia is not a risk factor noted by the CDC, *id.*, and neither condition is corroborated by the rest of the record.

The exhibits also provide some evidence of Defendant's "untreated and unrecognized high blood pressure," also known as hypertension. Defendant had blood pressure readings of 141/39 in late 2019 and 140/78 in March 2021, although his pulmonary function in March was described as "within normal limits." Dkt. Nos. 239-3 at 4; 239-4 at 3; *see also* Facts About Hypertension, CDC, (Sep. 8, 2020), https://www.cdc.gov/bloodpressure/facts.htm, (noting stage 1 hypertension at systolic blood pressures starting at 130 and stage 2 starting at 140).

That said, unverified hypertension combined with Defendant's obesity only suggests a particularized susceptibility to a degree recently rejected by the Court, and only if Defendant's vaccination and apparent full recovery from COVID-19 are ignored. *See United States v. Kennard*, No. 3:11-cr-147, 2021 WL 1697917, at *5 (E.D. Va. Apr. 29, 2021) ("[C]laims of moderate hypertension and obesity, without more, do not persuade this Court to grant compassionate release.") (denying compassionate release to an inmate with borderline obesity and hypertension without noting vaccination status). Defendant's conditions also cannot overcome the above burdens of showing a particularized risk of contracting COVID-19 and, critically, of showing that Defendant's release comports with 18 U.S.C. § 3553(a). As a result, the Court does not find extraordinary and compelling reasons under the test outlined in *Adamson*. 831 F. App'x at 83.

Defendant also generally asserts that "living conditions [at FCI Butner] are uncontrollable," citing unresolved litigation in another jurisdiction without providing evidence for the record. Dkt. 234 at 1. This does not "demonstrate any inadequacies" in FCI Butner protocols or show "how those inadequacies jeopardize [Defendant's] health." *United States v. Bryant*, No. 4:19-cr-47-10, 2020 WL 7497805, at *5 (E.D. Va. Dec. 21, 2020) (denying compassionate release). Thus, Defendant's general assertion does not "constitute an extraordinary and compelling reason." *Id.*

## III.  CONCLUSION

Defendant has not established that extraordinary and compelling reasons justify his release nor is the Court persuaded to recommend to the Bureau of Prisons that he be transferred to home confinement.

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. Nos. 234; 235) is DENIED.

It is further ORDERED that Defendant's Motion for Leave to File an Out of Time Reply (Dkt. 240) is GRANTED and the Replies (Dkt. Nos. 240-2; 241) are deemed to have been filed.

It is SO ORDERED.

Alexandria, Virginia
September 20, 2021

/s/
Rossie D. Alston, Jr.
United States District Judge